Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

*Attorney for Movant Non-party*
TWITTER, INC.

**FILED**

APR 3 0 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

*In the Matter of a Subpoena to Non-party Twitter, Inc.*

AARON RICH

   Plaintiff,

v.

EDWARD BUTOWSKY, MATTHEW COUCH, AMERICA FIRST MEDIA, and THE WASHINGTON TIMES,

   Defendants.

Case No. CV20 80081 MISC DMR

(D.C. Case No. 1:18-cv-00681-RJL)

**NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY SUBPOENA**

Date: June 4, 2020
Time: 9:00 a.m.

TWITTER, INC.'S MOTION TO QUASH OR MODIFY
NO. _____

## NOTICE OF MOTION AND MOTION TO QUASH OR MODIFY

**PLEASE TAKE NOTICE** that on June 4, 2020, at 9:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom _____, ____ Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Twitter, Inc. ("Twitter") will, and hereby does, move to quash or modify a subpoena seeking the identifying information associated with a Twitter account in connection with litigation in the District Court for the District of Columbia (the "Subpoena"), to which Twitter is not a party.

Twitter brings this motion under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires the court for the district where compliance is required (the Northern District of California for Twitter, which is headquartered in San Francisco) to quash a subpoena that requires disclosure of protected matter. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Julie E. Schwartz, all pleadings and papers on file in this action, and such other matters as the Court may consider.

Twitter requests that the Court quash or modify the Subpoena so that the issuing party receives only limited account registration information and the IP address associated with the account's creation for the Twitter account identified in the Subpoena only if the issuing party can satisfy the First Amendment's requirements for unmasking an anonymous speaker.

DATED: April 30, 2020                                      **PERKINS COIE LLP**

By: *Julie E. S.*

Julie E. Schwartz

*Attorney for Movant Non-party*
Twitter, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Non-party Twitter, Inc. ("Twitter") requests that the Court quash or modify Plaintiff Aaron Rich's ("Plaintiff") subpoena to Twitter, issued in connection with his litigation in the District Court for the District of Columbia (the "Subpoena"). The Subpoena seeks identifying information to potentially unmask a Twitter account holder who engaged in anonymous speech on Twitter's platform.

Twitter's primary goal is to ensure that the Subpoena not be used to chill anonymous speech that does not rise to the level of defamation. Accordingly, Twitter asks that the Subpoena be quashed or modified so that Plaintiff receives identifying information for the Twitter account at issue only if Plaintiff has satisfied the First Amendment to the U.S. Constitution's requirements for unmasking anonymous speakers.

Courts apply exacting tests depending on whether the anonymous speaker at issue is a party or non-party. If a litigant seeks to unmask a party, they must demonstrate that the speaker has caused real harm (i.e., pled a *prima facie* claim against a defendant) that outweighs any potential chilling effects. *See Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005). If the anonymous speaker is a non-party, courts must evaluate whether the unmasking request is issued in good faith, relates and is materially relevant to a core claim or defense, and is unavailable from another source. *See Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001).[1]

It is unclear to Twitter whether the speaker here is a party or witness, and in either case, whether Plaintiff has met these requirements. Under the *Highfields* standard, Plaintiff does not appear to have made a *prima facie* claim, as there are no allegations regarding the account at issue in Plaintiff's Complaint; Plaintiff does not claim that any named Defendant engaged in the speech

---

[1] Courts in this District routinely conduct First Amendment review of unmasking subpoenas, applying *Highfields* or *2TheMart* as appropriate. *See, e.g., In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *5 (N.D. Cal. Nov. 25, 2019); *In re Yasuda*, No. 19-MC-80156-TSH, 2020 WL 759404, at *6 (N.D. Cal. Feb. 14, 2020); *Sines v. Kessler*, No. 18-MC-80080-JCS, 2018 WL 3730434, at *12 (N.D. Cal. Aug. 6, 2018).

at issue; and Plaintiff does not name any Doe Defendants. Twitter also cannot determine whether harm to Plaintiff outweighs any chilling effects.

Twitter also cannot determine whether Plaintiff satisfies the *2TheMart* standard. It is unclear to Twitter whether Plaintiff is using the subpoena for a proper purpose to support his claims in the absence of another avenue to obtain the information. Plaintiff has not identified any Tweets disseminating the allegedly false FBI report, and it is unclear why the Accountholder's identity has bearing on whether the report contains truthful information.

Accordingly, Twitter seeks the Court's assistance to ensure that Plaintiff has satisfied the requirements before disclosing the account holder's identifying information. Twitter therefore requests that the Court undertake the applicable First Amendment analysis and quash or modify the Subpoena as necessary.[2]

## II.   BACKGROUND

### A.   Twitter

Twitter is a global information sharing and distribution platform committed to the free expression of over 100 million daily active users. Generally, Twitter account holders write short messages or Tweets of up to 280 characters, and can include photos, videos, and links to other content. By default, Tweets are public and may be viewed everywhere and by anyone. Twitter account holders either choose a handle (e.g., @handle) associated with their true identities or choose to speak pseudonymously.

### B.   Plaintiff and the @whysprtech Account

Plaintiff issued his subpoena in connection with *Rich v. Bukowski et al*, Civil Action No. 1:18-cv-00681-RJL, pending in the District Court for the District of Columbia. Plaintiff, the brother of deceased Democratic National Committee ("DNC") staffer Seth Rich, sued Edward Butowsky, Matthew Couch, America First Media, and the *Washington Times* (collectively, the "Defendants"). *Rich v. Bukowski et al.*, No. 1:18-cv-00681-RJL, (D.D.C. March 26, 2018), ECF

---

[2] Twitter brings this Motion pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires a court to quash a subpoena that requires disclosure of a protected matter. Twitter brings the motion in this district because it is the district where compliance is required—Twitter is headquartered and its records custodians are located in San Francisco, California.

No. 3 ("Complaint"). Plaintiff alleges that the Defendants falsely accused him and his brother of downloading documents from the DNC and selling them to WikiLeaks. *See* Complaint at 2. Plaintiff further alleges that the Defendants falsely accused him of engaging in deceit and obstruction of justice to cover his involvement in those acts. *See id.* Plaintiff filed a cause of action for defamation, false light, invasion of privacy, and intentional infliction of emotional distress, among other torts. *See generally* Complaint.

Plaintiff's Complaint contains no allegations regarding the Twitter account at issue here, @whysprtech (the "Account"), or its owner (the "Accountholder"). *See generally* Complaint. Plaintiff does not claim that any named Defendant made the statements, and no Doe Defendants are named in the Complaint. Nonetheless, in a letter to Twitter accompanying the Subpoena, Plaintiff claims that the Account published false statements about Plaintiff and Mr. Rich that supported Defendants' allegedly defamatory allegations. *See* Declaration of Julie E. Schwartz in Support of Non-Party Twitter's Motion to Quash Subpoena ("Schwartz Decl."), ¶ 2, Ex. A.

Specifically, Plaintiff claims that the Accountholder represented him or herself to be a Federal Bureau of Investigation ("FBI") agent with access to confidential documents concerning Mr. Rich's murder. *See id.*, Ex. A. Plaintiff alleges that the Accountholder used the Account to disseminate anonymously a fabricated FBI report promoting a conspiracy theory that Mr. Rich had stolen the DNC emails and communicated with WikiLeaks via his personal laptop. *See id.* Plaintiff alleges that this report was further disseminated by *Infowars* reporter Joe Biggs and cited by other news outlets. *See id.*

Plaintiff's letter only includes one Tweet as an example. That Tweet states, "Ill [sic] be releasing other emails and docs today via twitter and others to Joe. This way the media can attack me not Joe or anyone @Ranbobiggs." *Id.* at 2. Plaintiff does not identify any Tweets where the Accountholder claims to be an FBI agent or disseminates the allegedly false FBI report. However, Plaintiff claims that the Accountholder's identifying information "would either prove or disprove claims that @whysprtech provided information from inside the FBI." *Id.* at 3.

C.  **Plaintiff's Subpoena to Twitter**

On December 13, 2019, Plaintiff served Twitter with a subpoena seeking user and account information for the Account, excluding the contents of any communications. *See* Schwartz Decl., ¶ 2, Ex. A. Along with this subpoena, Plaintiff enclosed the above-referenced letter explaining why he believes the subpoena is appropriate. *See id.* Twitter's counsel met and conferred with Plaintiff's counsel multiple times to discuss the subpoena. *See id.*, ¶ 3. Plaintiff subsequently served Twitter with the Subpoena, dated March 5, 2020, which sought user and account information for the Account, bounded by a date range and excluding the contents of any communications. *See id.*, Ex. B. Plaintiff did not provide any documentation demonstrating that a court considered and imposed the First Amendment safeguards required before a litigant may be permitted to unmask the identity of an anonymous speaker. *See id.*

D.  **Twitter's First Amendment Concerns**

On March 17, 2020, Twitter served objections to the Subpoena. *See id.*, ¶ 4, Ex. C. The parties met and conferred to discuss Twitter's objections, including Twitter's objection that Plaintiff had not shown whether a court had applied the relevant First Amendment standards to his request. *See id.*, ¶ 5. The parties could not resolve Twitter's concerns regarding the Subpoena's potential chilling effects on protected speech without judicial application of the relevant First Amendment standards. *See id.*

Twitter therefore brings this motion to quash or modify the Subpoena to require production only if Plaintiff can satisfy the First Amendment's requirements for unmasking the Accountholder.

### III.   ARGUMENT

Anonymous online speech is protected by the First Amendment to the United States Constitution. As the Ninth Circuit has recognized, "[a]s with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation …[or] concern about social ostracism.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)). Enforcing

a subpoena to unmask an unknown speaker on the Internet "poses a real threat to chill protected comment on matters of interest to the public. Anonymity liberates." *Highfields*, 385 F. Supp. 2d at 980-81.

Requiring litigants to meet First Amendment standards ensures that speech is not chilled unnecessarily and that speakers are not unmasked inappropriately. Enforcing an unmasking subpoena could enable "[a litigant] to impose a considerable price on [another's] use of one of the vehicles for expressing his views that is most likely to result in those views reaching the intended audience. That 'price' would include public exposure of [a litigant's] identity and the financial and other burdens of defending against a multi-count lawsuit—perhaps in a remote jurisdiction." *Id.*

### A. Plaintiff Must Meet the *Highfields* Test if the Accountholder is a Party.

When a civil litigant, such as Plaintiff, asserts that a speaker should have their account identifying information disclosed, the First Amendment protects the speaker from being unmasked unless the litigant "persuade[s] the court that there is a real evidentiary basis for believing that the [speaker] has engaged in wrongful conduct that has caused real harm to the interests of the [issuing party]." *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015) (citing *Highfields*, 385 F. Supp. 2d at 975-76 and applying that decision's two-step unmasking test). This "real evidentiary basis" requires evidence that a plaintiff can establish a *prima facie* claim against the defendant in question. *See Highfields*, 385 F. Supp. 3d at 970-71 (citing *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 580 (N.D. Cal. 1999) (holding "plaintiff must make some showing that an act giving rise to civil liability actually occurred" and finding plaintiff entitled to conduct discovery to learn identity of defendant where plaintiff offered evidence "sufficient to demonstrate [defendants] committed an unlawful act").

If a litigant makes this showing, the court must then "assess and compare the magnitude of the harms that would be caused" to the parties' competing interests if the court ordered disclosure of the speaker's identity. *Music Grp. Macao*, 82 F. Supp. 3d at 983 (citing *Highfields*, 385 F. Supp. 2d at 976). If the court is not satisfied that the litigant has met both steps of the

*Highfields* test, the requesting party is not entitled to discover the anonymous speaker's identity. *See Music Grp. Macao* at 985-87 (denying motion to compel Twitter to produce identifying information for two anonymous Twitter users where Plaintiff did not satisfy the *Highfields* test).

Here, it is unclear to Twitter whether the Account belongs to a Defendant or to a non-party. If the Account belongs to a Defendant, or if Plaintiff intends to add the Accountholder as a Defendant, it is not clear whether Plaintiff has satisfied either step of *Highfields*.[3] First, it does not appear that Plaintiff has pled a *prima facie* claim against the Accountholder, as Plaintiff's Complaint has no allegations about or causes of action against the Accountholder. *See* Complaint; *see also, e.g.*, *Smythe v. Does*, No. 15-MC-80292-LB, 2016 WL 54125, at *3 (N.D. Cal. Jan. 5, 2016) (plaintiff did not show a "real evidentiary basis" to unmask anonymous Twitter user where complaint did not mention the user or explain how the user defamed her). Plaintiff does not claim that the Tweet identified in the letter is defamatory, and he does not provide any examples of Tweets where the Accountholder claims to be an FBI agent or disseminates the allegedly false FBI report. Therefore, the first prong does not appear to be met.

Second, *Highfields* also requires evidence that Plaintiff's need for the Accountholder's identity outweighs any chilling effects on protected speech. To be clear, Twitter takes no position about the truth or falsity of the Account's content. However, Plaintiff has not provided evidence of any specific speech that is false, and the Account purportedly discussed matters of significant public concern. Therefore, Twitter has concerns that disclosing the Accountholder's identity risks stifling protected speech. *See Highfields*, 385 F. Supp. 2d at 980 (recognizing that "[a]nonymity liberates."). Accordingly, the First Amendment standard should be applied to ensure the Accountholder is not unmasked inappropriately.[4]

---

[3] Plaintiff's letter to Twitter notes that Plaintiff "has an overwhelming interest in identifying, and holding accountable, those who are responsible" for disseminating allegedly false information via the Account, suggesting that Plaintiff contemplates adding the Accountholder as a Defendant. Schwatrz Decl., ¶ 2, Ex. A.

[4] Indeed, if the accounts do belong to parties to the matter, then the parties can collect and provide the information themselves. *See* Twitter Help Center, "How to access your Twitter data," *available at* https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data. Having the parties produce their own information (or object to its production and having the court adjudicate any objections) is the best way to ensure that litigation remains between the parties,

### B. Plaintiff Must Meet the *2TheMart* Test if the Accountholder is a Witness.

If, on the other hand, the Account does not belong to a party or potential party, the First Amendment's protections are even more stringent, and four factors must be met. Specifically, (1) the subpoena seeking the information must have been issued in good faith and not for any improper purpose, (2) the information sought must relate to a core claim or defense, (3) the identifying information must be directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense must be unavailable from another source. *2TheMart.com*, 140 F. Supp. 2d at 1095; *see Sines*, 2018 WL 3730434, at *12 (N.D. Cal. Aug. 6, 2018) (applying test). Where, as here, it is unclear whether the speaker is a party or witness, this Court has analyzed the request under both the *Highfiields* and the *2TheMart* standards. *See Awtry v. Glassdoor, Inc.*, No. 16-MC-80028-JCS, 2016 WL 1275566, at *13 (N.D. Cal. Apr. 1, 2016).

Twitter is unable to determine whether Plaintiff meets the *2TheMart* standard applicable to witnesses as well. For the first factor, Twitter is concerned that absent the Court's review, Plaintiff could use the Subpoena for an improper purpose—to chill potentially protected speech. *See, e.g., Highfields*, 385 F. Supp. 2d at 980.

Regarding the second and third factors, Twitter cannot discern whether a direct and material connection exists between the identifying information sought and Plaintiff's claims. *See* Complaint at 2. Plaintiff claims that learning whether the Accountholder was an FBI agent "would either prove or disprove claims that [the Account] provided information from inside the FBI." Schwartz Decl., ¶ 2, Ex. A. But Plaintiff has not identified any Tweets where the Accountholder claims to be an FBI agent, or any Tweets disseminating the FBI report. And even if the Accountholder is not an FBI agent, the Account presumably could have published actual FBI information.

---

which is where it belongs. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

9

Finally, under the fourth factor, it is unclear to Twitter whether information sufficient to establish the Accountholder's identity is available from another source, such as the Defendants who allegedly worked in concert with the Account. *See* Schwartz Decl., ¶ 2, Ex. A.

Without the Court's review to confirm that Plaintiff has met the relevant First Amendment standard, Plaintiff could use the mechanism of an unmasking subpoena to chill or silence protected speech, as could other litigants in future proceedings. Therefore, Twitter respectfully requests that the Court conduct the necessary analysis and quash or modify the Subpoena as appropriate.

## IV. CONCLUSION

Twitter respectfully requests that the Court conduct the appropriate First Amendment analysis and quash or modify the Subpoena as necessary to require production only if Plaintiff has satisfied the First Amendment's requirements for unmasking an anonymous speaker's identity.

DATED: April 30, 2020                **PERKINS COIE LLP**

By: /s/ Julie E. Schwartz

Julie E. Schwartz, Bar No. 260624
JSchwartz@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

*Attorney for Non-party*
Twitter, Inc.

TWITTER, INC.'S MOTION TO QUASH OR MODIFY
NO. _____