1  WILLKIE FARR & GALLAGHER LLP
   BENEDICT Y. HUR - #224018
2  bhur@willkie.com
   One Front Street, 34th Floor
3  San Francisco, CA 94111
   Telephone:    415 858 7400
4  Facsimile:    415 858 7599

5  WILLKIE FARR & GALLAGHER LLP
   SAMUEL HALL (appearing *pro hac vice*)
6  shall@willkie.com
   1875 K Street, NW
7  Washington, DC 20006
   Telephone:    202 303 1443
8  Facsimile:    202 303 2442

9  Attorneys for Plaintiff AARON RICH.

10                       UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                              OAKLAND DIVISION

| | |
|---|---|
| *In the Matter of a Subpoena to Non-Party Twitter, Inc.* | Case No. 4:20-mc-80081-DMR |
| | (D.C. Case No. 1:18-cv-00681-RJL) |
| AARON RICH | **OPPOSITION TO NONPARTY TWITTER, INC.'S MOTION TO QUASH OR MODIFY SUBPOENA** |
| Plaintiff, | |
| v. | Date:     June 4, 2020 |
| EDWARD BUTOWSKY, MATTHEW COUCH, AMERICA FIRST MEDIA, and THE WASHINGTON TIMES, | Time:     9:00 a.m. |
| | Dept: |
| | Judge:   Magistrate Judge Donna M. Ryu |
| Defendants. | |

Aaron Rich, Plaintiff in the underlying action *Rich v. Butowsky et al,* Civil Action No. 1:18-cv-00681-RJL (D.D.C.) (the "D.C. Litigation"), referred to herein as "Plaintiff" or "Mr. Rich," respectfully requests that the Court deny Twitter Inc.'s Motion to Quash or Modify Subpoena (the "Motion to Quash or Modify," "Motion," or "Mot."). Plaintiff issued a subpoena to Twitter on March 5, 2020 targeted solely at information necessary to permit Plaintiff to identity the individual using the @whysprtech user-handle in order to pursue demonstrably relevant discovery from him or her directly. Dkt. 2*,* Declaration of Julie E. Schwartz ("Schwartz Decl."), Ex. B (the "Subpoena"). Specifically, the Subpoena so requested:

> All user and account information concerning the Twitter account @whysprtech that was in use on May 29, 2017 or had the UID 868729045881696256, ***excluding*** the contents of any and all communications sent to or from the @whysprtech account.

*Id.* (emphasis added).

Twitter filed its Motion on May 4, 2020, seeking "the Court's assistance to ensure that Plaintiff has satisfied the requirements before disclosing the account holder's identifying information." Mot. at 4. For the factual and legal reasons discussed *supra* and *infra*, Plaintiff has satisfied the requirements for obtaining identifying information regarding the @whysprtech account. Twitter's Motion fails to meet its burden of persuasion, and any analysis of the facts under the relevant tests for protecting First Amendment speech clearly weighs in Plaintiff's favor.

The facts here are straightforward. Hiding behind the @whysprtech Twitter handle, an anonymous user disseminated a forged Federal Bureau of Investigation ("FBI") report and provided other false information regarding Seth Rich. The forged FBI report disseminated by @whysprtech came on the heels of an infamous and retracted Fox News May 16, 2017, article alleging that an FBI report existed linking deceased Democratic National Committee ("DNC") staffer Seth Rich to DNC documents that were published by WikiLeaks in the summer of 2016. Despite the fact that this report was obviously forged (as even a cursory glance at it would reveal), the forged FBI report may well have been the "report" that was referenced in the retracted Fox News article. Further, defendants in the D.C. Litigation—Edward Butowsky, Matthew Couch, and his non-profit organization America First Media (collectively, "Defendants")—appear to have relied upon it to spread false information about Plaintiff and his family in support of a growing conspiracy theory.

Plaintiff's efforts to restore his reputation through the underlying litigation have been thwarted by the destruction or loss of evidence—here, Plaintiff seeks to demonstrate the reach of the forged FBI report on the false information spread by Defendants, but cannot do so without serving discovery on the anonymous user who disseminated that report. Twitter's generalized and hypothetical concerns must give way to the specific and weighty need Mr. Rich has here. The Motion should therefore be denied.

## BACKGROUND

### I.      The D.C. Litigation

Plaintiff's brother, Seth Rich, worked as a staffer for the DNC. D.C. Litigation, Dkt. 3 ("Complaint"). Seth Rich was murdered in July 2016 in Washington, D.C. *Id.* Seth Rich's murder remains unsolved, though law enforcement suspects that it was the result of a botched robbery. *Id.* ¶ 26. Aaron Rich and the rest of the Rich Family have been heartbroken and grief-stricken by Seth Rich's death. *E.g.*, *id.* ¶¶ 26, 31 & n.5 (citing Mary & Joel Rich, *We're Seth Rich's parents. Stop politicizing our son's murder.*, The Washington Post, May 23, 2017, https://www.washingtonpost.com/opinions/were-seth-richsparents-stop-politicizing-our-sons-murder/2017/05/23/164cf4dc-3fee-11e7-9869-bac8b446820astory.html?utmterm=.9512044c79d0).

Because Seth Rich's murder coincided with WikiLeaks' release of DNC emails in the run-up to the 2016 presidential election, conspiracy theorists posited that Seth Rich was the source of the DNC emails and that he was murdered as a result. *Id.* ¶ 2. No documentary evidence has ever been identified or disclosed showing that Seth Rich was a source of DNC documents to Wikileaks, or that Aaron Rich played any role in this alleged misconduct. Nonetheless, Defendants advanced these baseless conspiracy theories exploiting Seth Rich's murder in order to push back against the Intelligence Community's conclusion that Russian agents hacked the DNC in an effort to interfere in the U.S. presidential election. *E.g.*, *id.* ¶¶ 2, 6, 31, 45, 50.

The Defendants in the D.C. Litigation have been leading proponents of the false conspiracies about Seth and Aaron Rich. Defendant Butowsky approached the Rich Family in early 2017 and offered to pay for Rod Wheeler, a former Washington, D.C., homicide detective, to serve

as a private investigator for the family. *Id.* ¶ 5. Defendant Butowsky then used Mr. Wheeler's position of confidence to fashion Mr. Wheeler as a "source" for a false *Fox News* article published on May 16, 2017— titled "Seth Rich, Slain DNC Staffer, Had Contact With Wikileaks, Say Multiple Sources" and bylined by Fox News Reporter Malia Zimmerman—alleging that Seth Rich was involved in leaking the DNC emails and that a FBI report had evidence of communications between Seth Rich and Wikileaks (the "Fox News Article"). *Id.* ¶¶ 5, 28-29. On May 23, 2017, Fox News retracted the story, issuing a statement that the article "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting." *See id.* ¶¶ 5, 28-30.

Defendant Butowsky then conspired with Defendant Couch—a social media influencer in Arkansas—to continue publishing false statements about Seth Rich, and expand the narrative to include his brother, Plaintiff Aaron Rich. On various occasions since early summer 2017, Defendants Butowsky and Couch have published false statements that: Mr. Rich assisted his brother in stealing the DNC emails and transmitting the emails to WikiLeaks; in exchange, Mr. Rich received money into his bank account from WikiLeaks; Mr. Rich knew his brother would be murdered and did nothing to stop it; and Mr. Rich did not cooperate with, and in fact obstructed, law enforcement's investigation into his brother's murder. *Id.* ¶¶ 6–7. In March 2018, Defendant Butowsky helped draft a false (and subsequently retracted) article published in *The Washington Times*, which falsely accused Mr. Rich of participating in the leak of DNC emails and obstructing the law enforcement investigation into his brother's murder. *Id.* ¶¶ 9, 71 & n.35; *Retraction: Aaron Rich and the murder of Seth Rich*, The Washington Times, September 30, 2018, https://www.washingtontimes.com/news/2018/sep/30/retraction-aaron-rich-and-murder-seth-rich/. Defendants' false statements are believed to have reached an audience of hundreds of thousands, if not millions, and they have caused Mr. Rich significant harm, including emotional, economic, and reputational damage. *Id.* ¶¶ 1, 11, 21, 104, 121, 134, 144.

On March 26, 2018, Plaintiff filed the D.C. Litigation against Defendants in the United States District Court for the District of Columbia, asserting claims for defamation and other causes of action.

**II.     Defendant's Reliance on an Alleged FBI Report**

Throughout the time period covered by the Complaint up to today, the Defendants have claimed that an unidentified inside source at the FBI provided some unidentified person with information allegedly confirming the existence of a FBI report purporting to establish that Seth Rich communicated with WikiLeaks. Most prominently, the retracted Fox News Article discussed *supra,* relied upon a so-called "federal investigator" who allegedly claimed to have reviewed a report by the FBI ("FBI Report"). Discovery has indicated that Mr. Butowsky worked closely with Ms. Zimmerman and others on the creation and publication of the Fox News Article, and Defendants Butowsky and Couch admit via their initial disclosures that Ms. Zimmerman possesses "knowledge about her investigation of and the article she wrote about Seth Rich's murder and about the FBI's file on the Seth Rich murder investigation" and "knowledge about her investigation of and the article she wrote about the leaking of the DNC emails to Wikileaks [sic] and the FBI's report relating to the leaked DNC emails," respectively. D.C. Litigation, Dkt. 83-3; D.C. Litigation, Dkt. 91-29.

Repeated Court filings have confirmed the Defendants' intent to rely on an alleged FBI Report, with an April 28, 2020 court filing calling it "critical" to the litigation. D.C. Litigation, Dkt. 183. All of this is notwithstanding that no Defendant claims ever to have seen this alleged report. D.C. Litigation at Dkt. 183. The purported FBI Report has been at the heart of Defendant Butowsky's narrative about Seth Rich since early 2017, and for the better part of the last three years, Defendant Butowsky has unsuccessfully sought (through his own investigative efforts, the efforts of third parties, and FOIA requests and litigation) to locate it. Yet, all Defendants, as well as Ms. Zimmerman, have been unable to identify a single human being who is willing to state in public that he or she has laid eyes on the purported FBI report.

**III.     The @whysprtech Account Involvement and the Subpoena**

[REDACTED]

1  ████████████████████████████████████████
2  ████████████████████████████████████████
3  ████████████████████████████████████████
4  ████████████████████████████████████████
5  ████████████████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████████████
8  ████████████████

The pseudonym "whysprtech" became public shortly after the retraction of the Fox News Article when several online publications reported that an FBI Report reportedly detailing links between Seth Rich and WikiLeaks had been leaked by an inside-source going by the Twitter handle @whysprtech.[1]  *See, e.g.* Sean Adl-Tabatabai, *Leaked FBI Memo Proves Seth Rich Talked To WikiLeaks*, NewsPunch (May, 29 2017), *available online at* https://newspunch.com/fbi-memo-seth-rich-wikileaks/ ("NewsPunch Post").  Around midnight on May 28, ████████ ████████████████████████████████████████████████████ Joe Biggs, a former InfoWars reporter using the Twitter handle @rambobiggs, first published the alleged FBI Report on his blogs and social media, including on his now-deactivated Twitter account:[2]

> **Joe Biggs** @Rambobiggs
>
> FBI Memo Reveals Seth Rich Had DNC Documents On Laptop -
>
> RETWEETS 1,507   LIKES 1,805
>
> 12:12 am - 28 May 2017

---

[1] In reporting on now deleted Tweets, @whysprtech claimed to be an inside source at the FBI. *See* Sean Adl-Tabatabai, "FBI: Seth Rich Told Police He Was A Political Target," NWO Report (Jun. 3, 2017), *available online at* https://nworeport.me/2017/06/03/fbi-seth-rich-told-police-he-was-a-political-target/  (citing @whysprtech as an "FBI insider").

[2] Web Archive of Joe Biggs (@Rambobiggs), Twitter (May 28, 2017) *available online at* https://web.archive.org/web/20170528164205/Www.twitter.com/rambobiggs.

Although many of the relevant Tweets have been deleted, available evidence indicates that Mr. Biggs publicly confirmed that he received the purported FBI Report from the Twitter user named @whysprtech: [3]



And Tweets by @whysprtech confirm not only that he or she was Mr. Biggs' source but also provided information to Ms. Zimmerman[4]:



The user @whysprtech further explained in a series of Tweets that providing information to outlets

---

[3] Web Archive of Joe Biggs (@Rambobiggs), Twitter (May 28, 2017) *available online at* https://polititweet.org/tweet?account=70024758&tweet=868854912578408449; *see also, e.g.,* NewsPunch Post.

[4] Web Archive of TruthWyspr (@whysprtech), Twitter, *available online at* https://web.archive.org/web/20170529030652/https:/twitter.com/whysprtech; Web Archive of TruthWyspr (@whysprtech), Twitter, *available online at* https://web.archive.org/web/20170528154958/https:/twitter.com/whysprtech.

like Fox News, and Mr. Biggs' blog, enhances the chances that the information will not "get discredited."[5] At least one publication concluded after discussing the report with @whysprtech that the "internal FBI memo" that @whysprtech "leaked" was the same FBI Report referenced in the retracted Fox News Article. *See* NewsPunch Post ("Yes it is heavily redacted, But [sic] it looks to be the first card pulled from the foundation of the house of cards put up by the DNC and LEFT Liberal Media. I've reached out to the source on their twitter [sic] account today, and had a short DM conversation with this source. I asked very pointed questions only that REAL Fox News source would know, And [sic] he was able to satisfy my curiosity. ***This Fox News source goes by the handle WhySprTech.***" (emphasis added)).

Many internet commentators, even WikiLeaks, immediately questioned the authenticity of @whysprtech's alleged FBI Report. By way of examples, after Mr. Biggs published the alleged report, several comments to the post were immediately added by readers pointing out obvious flaws.[6] WikiLeaks weighed in, noting that the alleged report was "an exceedingly [deliberately?] poor quality fabrication as is indicated by the header and other elements[.]"[7] Mr. Biggs subsequently removed the report on June 1, 2017, as shown by web caching from that date. *See* Web Archive of Joe Biggs, "FBI Memo Reveals Seth Rich Had DNC Documents On Laptop," Borderland Alternative Media (June 1, 2017), *available online at* https://web.archive.org/web/20170601213938/http://borderlandalternativemedia.com/2017/05/fbi-memo-reveals-seth-rich-dnc-documents-laptop/ (providing an "Error" message for the url that

---

[5] Comments to "Joe Biggs Claims He Has Redacted FBI Document That Mentions Seth Rich's Laptop, DNC and Wikileaks (UPDATED)," Steemit (May 28, 2017), *available online at* https://steemit.com/sethrich/@v4vapid/joe-biggs-claims-he-has-redacted-fbi-document-that-mentions-seth-rich-s-laptop-dnc-and-wikileaks (imbedding Tweets from @whysprtech).

[6] *See* Web Archive of comments to Joe Biggs, "FBI Memo Reveals Seth Rich Had DNC Documents On Laptop," Borderland Alternative Media (May 26, 2017), *available online at* https://web.archive.org/web/20170531212921/http://borderlandalternativemedia.com/2017/05/fbi-memo-reveals-seth-rich-dnc-documents-laptop/ ("Hate to say it, but the memo doesn't look real. The redacting is bizarre. They redact entire words or phrases, they don't just redact part of a date or name (like the H and R in Seth Rich). I think it's a red herring. Be careful, these are violent, desperate people."); *id.* ("That memo is fake. It fails to follow the proper format. Compare what we can see to what an actual memo looks like:" (linking to a document)).

[7] WikiLeaks (@wikileaks), Twitter (May 28 2017 at 5:24PM), *available online at* https://twitter.com/wikileaks/status/868805104429826053 (linking to Mr. Biggs' original tweet).

previously linked to the relevant post).

Mr. Biggs responded to a subpoena issued by Plaintiff that asked for *inter alia* communications relating to the Twitter account @whysprtech, Hall Decl. Ex. 3, by producing a single text chain with an individual Mr. Biggs identified as Malia Zimmerman, *id.* at Ex. 4. In the text messages, "Malia" texted Mr. Biggs stating:

> Just wanted to check in with you. ***Have your heard anything from our mutual friend . . . ? He mentioned you knew each other and said he gave you a document but it doesn't appear to be a real one***. Wondering what you think?

*Id* (emphasis added). Mr. Biggs then responded, stating "***It's a fake for sure***." *Id.* (emphasis added). Ms. Zimmerman then responded, in part: "Do you know anything about him ***or where he really works or who he is***? . . . [***I'm***] ***wondering why he passed a fake document*** when other info he's shared has been spot on." *Id.* (emphasis added). Mr. Biggs, Ms. Zimmerman, and the Defendants thus far have been unable, or have refused, to provide any identifying information for @whysprtech. Additionally, as discussed *supra*, many of the Twitter accounts in question, including those belonging to @whysprtech and Mr. Biggs, have been deleted.

## LEGAL ARGUMENT

**I.   THE COURT SHOULD DENY TWITTER'S MOTION BECAUSE IT FAILS TO MEET ITS BURDEN TO SUBSTANTIATE HARDSHIP.**

As the moving party, Twitter "bears the 'burden of persuasion' under Rule 45(c)(3)" to show that any purported "hardship" outweighs "the relevance of the discovery sought" and "the requesting party's need." *ATS Prods., Inc v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (citations omitted). Twitter does not appear to argue that it has met its burden to justify quashing the Subpoena. Instead, the Motion "seeks the Court's assistance to ensure that Plaintiff has satisfied the requirements before disclosing the account holder's identifying information," Mot. at 4, because it "has *concerns* that disclosing the Accountholder's identity risks stifling protected speech" and is "unable to determine whether Plaintiff meets the [relevant] standard," Mot. at 8-9 (emphasis added). Twitter takes no position on whether the facts at hand are adequate to quash or modify the subpoena, and instead asks for the Court's help to "conduct the necessary analysis and

quash or modify the Subpoena as appropriate." *Id.* at 10.  Hypothetical burdens are insufficient to meet the burden or persuasion.  *See ATS Prods.*, 309 F.R.D. at 531; *see also Sines v. Kessler*, No. 18-MC-80080-JCS, 2018 WL 3730434, at *15 (N.D. Cal. Aug. 6, 2018) (noting that hypothetical burdens are insufficient to meet the burden of persuasion when seeking to quash a subpoena).  For the reasons discussed *supra* and *infra*, the Court should enforce the Subpoena and determine that Plaintiff has herein satisfied the relevant requirements as a matter of fact and law.  But even if this Court were to find Plaintiff's evidence lacking, this Motion must still be denied given Twitter's inability to carry its burden.

## II. PLAINTIFF HAS SATISFIED THE REQUIREMENTS FOR TWITTER TO RELEASE @WHYSPRTECH'S IDENTIFYING INFORMATION

The sole purported "hardship" that Twitter advances is that the Subpoena *may* (not *will*) "be used to chill anonymous speech."  Mot. at 3; *see also id.* at 9 ("Plaintiff **could** use the Subpoena for an improper purpose-to chill potentially protected speech") (emphasis added); *id*. at 8 ("not clear" whether the Subpoena passes the legal test).  But the Motion provides no basis to determine that the Subpoena would chill speech, nor could it, because the Subpoena meets the standards laid out in the guiding case law cited in the Motion.  *See* Motion at 3, 7-10 (citing *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001) and *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)).

### a. Plaintiff Meets the *2TheMart* Test

Twitter has presented no argument as to why the *2TheMart.com Inc.* factors—"(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or disprove that claim or defense is unavailable from any other source"—do not weigh in favor of the release the identity of @whysprtech.  *Sines*, No. 18-MC-80080-JCS, 2018 WL 3730434, at *12 (quoting *2TheMart.com Inc.*, 140 F. Supp. 2d at 1095).  Twitter's concerns are solely hypothetical and bare no nexus to the facts before the Court, which more than meet the factors identified in *2TheMart*.

*First*, the Subpoena is plainly being issued in good faith, as part of the truth-seeking process of and based on evidence produced during ongoing civil discovery. *See supra* at 1-8. *Second*, the identity and role of @whysprtech is directly relevant to Plaintiff's burden of proof and the Defendants' defense of truth, including the falsity of his or her statements about the forged FBI Report, the origins of the forged FBI Report he or she appears to have procured and published, whether @whysprtech provided the forged report to the Defendants and, if so, what he or she informed Defendants when providing it. ███████████████████████████████████████ and all of the Defendants have evinced an intent to rely upon a so-called FBI Report, which may be the very document that @whysprtech provided to Ms. Zimmerman and Mr. Biggs, and on which the retracted Fox News Article relied. *See id.* at 4-9. *Third*, determining the validity of the information from and the credibility of the alleged sources on which the Defendants will rely to defend their defamatory statements largely depends upon first learning the identity of the source. Indeed, learning the identity of @whysprtech is necessary in order to confirm that @whysprtech was not in fact a FBI "insider" or otherwise someone who had access to non-public FBI material, and would provide Plaintiff with an ability to follow up on any needed discovery from @whysprtech regarding the falsity of Defendants' allegations detailed in Plaintiff's Complaint. *Fourth*, this information is not available from any other source. Plaintiff has not found any source willing or able to confirm @whysprtech's identity, despite efforts to subpoena or issue other discovery requests to the relevant party and third-parties involved. *See id.* at 8.

### b.  Plaintiff Meets the *Highfields* Test

Twitter posits that it is not "clear" that the Subpoena meets the *Highfields* test because Plaintiff (1) "does not claim that the Tweet identified in the letter is defamatory, and he does not provide any examples of Tweets where the Accountholder claims to be an FBI agent or disseminates the allegedly false FBI report[;]" and (2) "has not provided evidence of any specific speech that is false[.]" Motion at 8. If *Highfields* is the applicable test here—notwithstanding the fact that *Highfields* dealt with discovery against a party, and here neither @whysprtech nor a John

Doe party representing that account holder is a Defendant in the D.C. Litigation—it is clearly met.[8]

*First*, as discussed *supra* at 1-9, there is "real evidentiary bases" that the accountholder @whysprtech has caused "real harm to the interests of the plaintiff." *Highfields*, 385 F. Supp. 2d at 975. Indeed, public posts and private communications gathered in discovery for the D.C. Litigation provide direct evidence that @whysprtech communicated about and released (including with Ms. Zimmerman) what he purported to be an FBI Report claiming to show that the FBI had evidence that Seth Rich communicated with WikiLeaks—that alleged report has been used to advance many (if not most) of the theories that have circulated regarding Plaintiff. *See supra* at 1-9.

*Second*, there can be no serious argument that the interest in permitting @whysprtech to hide behind a pseudonym to spread false "evidence" trumps Plaintiff's right to defend himself from Defendants' false accusations that he committed treason, knew his brother was going to be murdered, and obstructed justice, which Defendants claim are based (in whole or part) on the very FBI Report @whysprtech purportedly released. *See id.* at 3-9. There is no First Amendment interest in false statements of fact. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues."); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) ("False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective."). That someone chooses to spread pernicious falsehoods anonymously does not somehow confer constitutional protection on what is otherwise valueless noise. Plaintiff's need for this information, on the other hand, is a far cry from the interests of the plaintiffs in *Highfields*, where the court found that "[t]here simply is no reason to

---

[8] In *Highfields*, the court conducted a two-step analysis: asking whether (1) "there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff" and (2) "whether the extent of the harm to defendant's First Amendment and privacy interests could be justified by the magnitude of the contribution that enforcing the subpoena likely would make to the interests plaintiff seeks to advance through the litigation." *Highfields*, 385 F. Supp. 2d at 975-80.

1  believe, on the record made here, that the posting of these three messages poses any threat to any
2  commercial interest of plaintiffs." *Highfields,* 385 F. Supp. 2d at 981.  Here, @whysprtech appears
3  to have purposefully lit a match, using a deliberately fabricated FBI Report, fueling the defamatory
4  campaign against Plaintiff (alongside his deceased brother), which has caused enormous harm to
5  the Plaintiff and his grieving family.  *Id.*  Twitter's interests in protecting the speech at issue, and
6  Plaintiff's interest in defending himself, simply do not compare. Twitter's motion should be denied.

       **c. The Existence of a Protective Order Tips the Balance of Interests Well in Plaintiff's Favor**

9  Although the points detailed *supra* are sufficient in themselves to deny Twitter's Motion,
10 at a minimum, the Court should deny the Motion and permit Twitter to designate the relevant
11 materials as confidential under the Protective Order currently governing discovery in the D.C.
12 Litigation.  D.C. Litigation, Dkt. 29; Hall Decl. Ex 5.  Pursuant to that order, information produced
13 to the parties may be designated as "Confidential Information" or "Highly Confidential –
14 Attorneys' Eyes Only," both of which restrict the use of the information for any purpose other than
15 the litigation.  Moreover, under the "Highly Confidential – Attorneys' Eyes Only" designation, the
16 information "can be shielded from even Plaintiffs in this case," *Sines*, No. 18-MC-80080-JCS,
17 2018 WL 3730434, at *14; Hall Decl. Ex 5 ¶¶ 3, 5.  As a result, any concerns about chilling First
18 Amendment protected speech can be adequately addressed by Twitter by simply designating the
19 materials, as appropriate.  That said, as argued *supra* at 10-12, given the inapplicability of the First
20 Amendment to false speech, it is unclear whether such designations would be warranted here.
21 Courts in the Ninth Circuit have taken into account the existence of a protective order when
22 determining the potential burden of unmasking anonymous internet accounts.  *See In re*
23 *Anonymous Online Speakers*, 661 F.3d 1168, 1177-78 (9th Cir. 2011) (permitting testimony into
24 identity of anonymous speakers because *inter alia* the "parties have a protective order in place that
25 provides different levels of disclosure for different categories of documents to various recipients,"
26 and that a "protective order is just one of the tools available to the district court to oversee discovery
27 of sensitive matters that implicate First Amendment rights"); *Sines*, No. 18-MC-80080-JCS, 2018
28 WL 3730434, at *14 (upholding a subpoena seeking to unmask a user, in part because of the

existence of a protective order that would prevent the parties from misusing or otherwise making public the identity of the user).[9]   Here, because the Subpoena requests information that can be protected under the Protective Order already in existence in the D.C. litigation, any potential chill on a First Amendment privilege can be adequately addressed by Twitter.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Twitter's motion.

Dated:  May 14, 2020                                                    WILLKIE FARR & GALLAGHER LLP

By:   /s/ Benedict Y. Hur
          BENEDICT Y. HUR
          SAMUEL HALL

          Attorneys for Plaintiff AARON RICH

---

[9] *See also A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (compelling discovery, in part, because "plaintiff's need for [defendant's] financial documents outweighs [defendant's] claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order"); *In re Heritage Bond Litig.*, No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004) (compelling discovery, in part, because "[a]ny privacy concerns . . . defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter").