UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RICH,<br><br>        Plaintiff,<br><br>    v.<br><br>EDWARD BUTOWSKY, et al.,<br><br>        Defendants. | Case No. 20-mc-80081-DMR<br><br>**ORDER ON MOTION TO QUASH SUBPOENA**<br><br>Re: Dkt. No. 1 |

Aaron Rich is the plaintiff in *Rich v. Butowsky et al*, Case No. 18-cv-00681-RJL (D.D.C.) (the "D.C. Litigation"), in which he asserts a claim for defamation, among other claims, against Edward Butowsky, Matthew Couch, America First Media, and the Washington Times. On March 5, 2020, Rich served a subpoena on non-party Twitter, Inc ("Twitter"), seeking user and account information concerning the anonymous Twitter user with the handle @whysprtech (the "Account"). [Docket No. 2, Declaration of Julie E. Schwartz in Support of Motion to Quash ("Schwartz Decl."), Ex. B (the "Subpoena").] Twitter moves to quash the subpoena. [Docket Nos. 1 ("Mot."), 13 ("Reply").] Rich filed a timely opposition. [Docket No. 20 ("Opp.").] This matter is suitable for determination without hearing pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the motion to quash is denied.

**I.    BACKGROUND**

    **A.    The D.C. Litigation**

The D.C. litigation arises out of the murder of Rich's brother, Seth Rich, in July 2016 in Washington, D.C. [D.C. Litigation, Docket No. 3 ("D.C. Compl.") ¶ 2]. The murder remains unsolved, but Rich alleges that "law enforcement in D.C. has consistently represented that Seth's

murder was the result of an attempted robbery." *Id* ¶ 26. Seth Rich had been a staffer for the Democratic National Committee ("DNC") before his death. *Id.* ¶ 25. In the lead-up to the 2016 presidential election, Wikileaks (a media organization known for publishing classified materials provided by anonymous sources) leaked hacked emails stolen from the DNC. *Id.* ¶ 1.

Rich alleges that Defendants in the D.C. Litigation made false statements that connected his brother's murder to the DNC hacking and Wikileaks. D.C. Compl. ¶ 7. According to Rich, Defendants published that Rich assisted his brother in stealing the DNC emails and transmitting the emails to WikiLeaks; that, in exchange, Rich received money from WikiLeaks; that Rich knew his brother would be murdered and did nothing to stop it; and that Rich obstructed law enforcement's investigation into his brother's murder. *Id*. Rich characterizes Defendants statements as "baseless conspiracy theories" used to "disprove allegations that the Trump Campaign colluded with the Russian Government to influence the 2016 Election." *Id.* ¶ 1, 90.

Rich alleges that Butowsky contacted Seth Rich's family and offered to hire private detective Rod Wheeler to investigate Seth Rich's murder. D.C. Compl. ¶ 27. Allegedly, Butowsky then used Wheeler's inside connection to fashion Wheeler as a "source" for a defamatory Fox News article published on May 16, 2017. *Id.* ¶ 29. Malia Zimmerman, an alleged associate of Butowsky, is the author of the Fox News article titled "Seth Rich, Slain DNC Staffer, Had Contact With Wikileaks, Say Multiple Sources" (the "Fox Article").[1] *Id.* n. 4. The Fox Article stated that an unnamed "federal investigator" had reviewed a "FBI forensic report detailing the contents of DNC staffer Seth Rich's computer" (the "FBI Report") that showed Seth Rich had emailed Wikileaks before his death. *Id*. Fox News later retracted the Fox Article because it "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting." *Id.* ¶ 30. Wheeler later sued Butowsky and Fox News for knowingly attributing false statements to him without his permission. *Id.* at 85.

---

[1] Malia Zimmerman, *Slain DNC Staffer Had Contact With WikiLeaks, Say Multiple Sources*, Fox Nation, May 16, 2017, http://nation.foxnews.com/2017/05/16/slain-dnc-staffer-hadcontact-wikileaks-say-multiple-sources, *available at* https://web.archive.org/web/20170516223721/http://nation.foxnews.com/2017/05/16/slain-dnc-staffer-had-contact-wikileaks-say-multiple-sources.

1  Rich asserts that the Defendants have relied on the FBI Report as part of the D.C. Litigation.
2  Opp. at 4. According to Rich, Defendants do not claim to have seen the FBI Report. *Id.* However,
3  evidence produced during discovery indicates that Butowsky and Zimmerman worked together on
4  the Fox Article that cites the FBI Report. *Id.* Rich alleges that Defendants continue to claim, as
5  part of the D.C. Litigation, that an unidentified inside source within the FBI provided them with the
6  FBI Report that purportedly links Seth Rich to Wikileaks. *Id.* Defendants have also allegedly
7  attempted to find the source of the FBI Report without success. *Id.* Rich alleges that neither
8  Defendants nor Zimmerman have successfully identified anyone who can confirm the authenticity
9  of the FBI Report. *Id.*

### B.     The Account

Rich claims that the anonymous user associated with the Account may have disseminated the forged FBI Report cited in the Fox Article. Opp. at 2. Additionally, Rich claims that user information for the Account may lead to evidence about "the reach of the forged FBI report on the false information spread by Defendants." *Id.*

Through discovery, Rich uncovered communications that occurred on May 28, 2017 between Defendants and an individual with the email address whysprtech@gmail.com. Opp. at 4. Further investigation into the whysprtech@gmail.com email account revealed two emails to an individual, "David Edwards," who had an FBI.gov email address. *Id.* at 4-5, Exs. 1-2; Docket No. 9-1, Declaration of Samuel Hall ("Hall Decl."), Exs. 1-2. On the same day that the user of the whysprtech@gmail.com address emailed David Edwards, Joe Biggs, a reporter with InfoWars, published an FBI Report (allegedly the report cited in the Fox Article) on Twitter. *Id.* at 5 n. 2. In a later post, Biggs named the Account as his "source" for the FBI Report. *Id.* at 6, n. 3. Biggs later removed the FBI Report from his Twitter account. *Id.* at 8.

Tweets by the Account confirmed that the anonymous user claimed to have leaked FBI materials to Biggs and Zimmerman. Opp. at 6 n. 4. Based on those tweets, Rich issued a subpoena on Biggs for all information related to the user of the Account. *Id.* at 8. Rich discovered a text chain between Biggs and Zimmerman, which showed that they were in communication about the authenticity of the FBI Report and the source's posturing as an FBI agent. *Id.* at 8; Hall Decl., Ex.

3. Biggs and Zimmerman never explicitly mention the name of the account or exactly what and who they are talking about. In the texts, Biggs stated "It's a fake for sure." *Id.*; Hall Decl., Ex. 4. Zimmerman responded "Do you know anything about him or where he really works or who he is? . . . [I'm] wondering why he passed a fake document when other info he's shared has been spot on." *Id.* Rich asserts that Biggs, Zimmerman, and Defendants are unable or unwilling to provide any identifying information for the anonymous Twitter user @whysprtech. Opp. at 8. The Twitter accounts belonging to @whysprtech and Biggs have since been deleted. *Id.*

On March 5, 2020, Rich issued the Subpoena on Twitter requesting "All user and account information concerning the Twitter account @whysprtech that was in use on May 29, 2017 or had the UID 868729045881696256, excluding the contents of any and all communications sent to or from the @whysprtech account." Twitter moves to quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii).

## II. LEGAL STANDARD FOR MOTION TO QUASH

Under Fed. R. Civ. P. 45(d)(3)(iii), upon timely motion, the district court where compliance with a subpoena is required must quash a subpoena if it "requires disclosure of privileged or other protected matter." Additionally, under Fed. R. Civ. P. 45(d)(3)(A)(iv) the court must quash a subpoena if it "subjects a person to undue burden." "On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Pers. Audio LLC v. Togi Entm't, Inc.*, Case No. 14-ms-80025-RS, 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014). Therefore, the party resisting discovery bears the burden to demonstrate why discovery should not be permitted. *Botta v. PricewaterhouseCoopers LLP*, 18-CV-02615-RS (LB), 2018 WL 6257459, at *1 (N.D. Cal. Nov. 30, 2018).

Motions to quash are limited by the scope of discovery under of Fed. R. Civ. P. 26, which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

4

1  whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ.
2  P. 26(b)(1). The relevancy standard under Fed. R. Civ. P. 26 also applies to third-party subpoenas.
3  *Beinin v. Ctr. for Study of Popular Culture,* Case No. 06–cv–02298-JW, 2007 WL 832962, at *2
4  (N.D. Cal. Mar. 16, 2007).

**III.  DISCUSSION**

Twitter asks the court to quash the Subpoena if it violates the First Amendment rights of the anonymous Account user. Mot. at 2. at 6-14. "An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 352 (1995). The Ninth Circuit recognizes that the decision to remain anonymous extends to anonymous speech made on the internet. *In re Anonymous Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("[O]nline speech stands on the same footing as other speech – there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870 (1997))). The Ninth Circuit has explained that "the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without '. . . concern about social ostracism.'" *Id.* (quoting *McIntyre*, 514 U.S. at 341–42).

Anonymous speech "is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *In re Anonymous Speakers*, 661 F.3d at 1173. In discovery disputes involving the identity of anonymous speakers, "the notion that commercial speech should be afforded less protection than political, religious, or literary speech is hardly a novel principle." *Id.* at 1177 (9th Cir. 2011) (citing to *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 248 (4th Cir. 2009)). Federal and state courts have used a "variety of standards to benchmark whether an anonymous speaker's identity should be revealed." *Id.* at 1173.

Twitter argues that the Court should apply the First Amendment standards laid out in *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001).[2] Mot. at 2. While the Ninth Circuit

---

[2] Twitter also mentions the test laid out in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005). However, this standard is used when the anonymous speaker is a party to the

has not explicitly approved of the *2TheMart.com* test, it has been applied by at least one other court in this district. *See Sines v. Kessler*, Case No. 18-mc-80080-JCS, 2018 WL 3730434 (N.D. Cal. Aug. 6, 2018). Rich does not object to the application of the test. The court finds *2TheMart.com* persuasive for this issue and will refer to it for guidance.

In *2TheMart.com*, the Western District of Washington addressed the then-novel issue of "federal court authority evaluating the First Amendment rights of anonymous Internet users in the context of a third-party civil subpoena." 140 F. Supp. 2d at 1091 n. 4. The defendant in that case sought the identity of more than twenty anonymous speakers in support of an affirmative defense. *Id.* at 1090. The defendant issued a subpoena to the internet service provider ("ISP") that held the anonymous speakers' identifying information. *Id.* at 1089. After the ISP sent an email to the anonymous speakers to inform them of the subpoena, one speaker filed an anonymous motion to quash, contending that the subpoena violated his or her right to anonymous speech. *Id.* at 1091. The district court found that "[w]hen the anonymous Internet user is not a party to the case, the litigation can go forward without the disclosure of their identity." *Id.* at 1095. Therefore, "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id.* The court in *2TheMart.com* articulated four factors that courts should consider in determining whether this standard has been met, including whether:

> (1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Id*. The court explained that the test "provides a flexible framework" in which the weight of each factor depends on the circumstances of the case. *Id*. The *2TheMart.com* decision includes "conflicting statements as to whether this list describes elements that must all be established or factors to be weighed against one another." *Sines*, 2018 WL 3730434, at *13 n. 16. This court, like

---

litigation. The user of the Account is not a party in the D.C. Litigation and so the *Highfields* test is not appropriate here.

1  *Sines*, will apply the "more flexible approach of weighing factors based on the circumstances of a
2  given case . . . ." *Id.*

3  Upon analysis, the court finds that all four of the *2TheMart.com* factors weigh against
4  granting Twitter's motion to quash.

### A. Good Faith

6  The first factor looks at whether "the subpoena seeking the information was issued in good
7  faith and not for any improper purpose." *2TheMart.com*, 140 F. Supp. 2d at 1095. Twitter claims
8  it is concerned that Rich could use the Subpoena to chill protected speech, which would be for an
9  improper purpose. Mot. at 9. Rich argues that the Subpoena was issued in good faith as part of
10 ongoing litigation based on evidence produced during discovery. Opp. at 10. Additionally, Rich
11 argues that the protective order issued by the court in the D.C. Litigation weighs against a finding
12 of bad faith. *Id.* at 12; Hall Decl., Ex. 5 ("Protective Order"). Rich asserts that the Protective Order
13 allows the party producing discovery to classify materials as "Highly Confidential Information –
14 Attorneys' Eyes Only." Protective Order § 6. "Highly Confidential" discovery material may only
15 be used in connection with the D.C. Litigation. *Id.* § 2. "Highly Confidential" discovery materials
16 may only be disclosed to party counsel; the author of the discovery material; witnesses and their
17 counsel; retained experts; the court and its staff; and any other persons only upon order of the court.
18 *Id.* at § 5(a)-(f). Twitter argues in its reply that the Protective Order cannot be substituted for a First
19 Amendment analysis because the release of any knowledge of user information for the Account is
20 enough to endanger the constitutional protection. Reply at 6.

21 Here, unlike in *2TheMart.com* where the subpoena was "extremely broad," the Subpoena is
22 narrowly tailored to exclude any personal communications made by the Account user. *See* 140 F.
23 Supp. 2d at 1095. Additionally, Rich has shown that Defendants will likely rely on the affirmative
24 defense of truth with regard to the FBI Report, which weighs in favor of a finding of good faith. *See*
25 *id.* at 1096 (no bad faith or improper purpose because it was reasonable to believe that the
26 information sought was relevant to an affirmative defense.) Finally, the Protective Order is
27 sufficient to prevent the harm contemplated by Twitter. The Protective Order allows any producing
28 party to designate discovery materials as "Highly Confidential." Protective Order § 6. Under this

7

1  designation, disclosure is limited to individuals involved in the case and the information cannot be
2  used for any other purpose other than the action. *Id.* § 2. Thus, the Protective Order provides
3  adequate safeguards against Rich's ability to publicize the user information for inappropriate
4  reasons. *See Sines*, 2018 WL 3730434, at *13 (existence of protective order weighs against a finding
5  of bad faith).
6        In sum, it is reasonable to infer that information relating to the Account will be relevant to
7  the claims and defenses in the D.C. Litigation, negating an inference of bad faith. Additionally,
8  Rich's request is narrowly tailored and the Protective Order provides a safeguard against any
9  improper use of information. The first factor therefore weighs in favor of disclosure.

### B. Core Claim or Defense

The second *2TheMart.com* factor looks at whether "the information sought relates to a core claim or defense." 140 F. Supp. 2d at 1095. Rich asserts that the requested discovery relates to his defamation claim and Defendants' defense of truth to that claim. Having reviewed the D.C. Complaint, the court is satisfied that the defamation claim is a core claim in the D.C. Litigation.

### C. Material Relevance

The third factor considers whether "the identifying information is directly and materially relevant to [the core] claim or defense." 140 F. Supp. 2d at 1095. While Rule 26 permits broad discovery for information that reasonably appears relevant, "a higher threshold of relevancy must be imposed" when First Amendment rights are implicated. *2TheMart.com*, 140 F. Supp. 2d at 1096. The information must be "directly and materially relevant to a core claim or defense" in order to outweigh the user's First Amendment right to anonymous speech. *Id.* Here, Rich alleges that Defendants relied on the FBI Report in making their allegedly false statements. Rich has presented evidence to suggest that the FBI Report was leaked by the Account user. *See* Opp. at 5-6. The identity of the user is directly and materially relevant to Rich's defamation claim since it will inform whether Defendants made their statements with the requisite state of mind. *See Beeton v. D.C.*, 779 A.2d 918, 923 (D.C. 2001) (stating that a defamation plaintiff must show that "the defendant's fault in publishing the statement amounted to at least negligence"). The information sought is also materially relevant to the defense of truth because the original source may be able to provide what

facts, if any, formed the basis for the various assertions about Rich.[3]  Additionally, the user information for the Account could lead to an essential witness for Rich and/or Defendants.  *See Sines*, 2018 WL 3730434, at *14 ("[U]ncovering potential witnesses and participants is an integral part of Plaintiffs' case . . . .").  In considering the extent to which the Account user's interest in anonymity weighs against the relevance of his account information, the Protective Order mitigates the risk of harm to the Account and further tips this factor in favor of disclosure.  The information sought is proportional to the needs of the case because the Subpoena is limited in scope and Twitter does not argue that responding would pose an undue burden.

In light of these considerations, the third factor weighs towards disclosing the anonymous user's account information.  *See Sines*, 2018 WL 3730434, at *14.

### D.  Other Sources

The final *2TheMart.com* factor looks at whether "information sufficient to establish or to disprove [the core] claim or defense is unavailable from any other source."  140 F. Supp. 2d at 1095.  In *2TheMart.com*, the court found that the messages sought were available to the public online, and that therefore the fourth factor weighed against disclosure.  *Id.* at 1097.  Here, by contrast, Rich has provided evidence, and Twitter does not dispute, that Twitter is the only source of information about the Account.  After serving discovery requests on Defendants, Rich still cannot find identifying information for the Account.  Opp. at 8.  Additionally, a subpoena served on Biggs, a third party in contact with the Account, uncovered no identifying information for the anonymous user.  *See* Hall Decl., Ex. 3.  Rich has completed sufficient discovery for the court to weigh this factor in favor of disclosure.

In sum, all four of the *2TheMart.com* factors favor Rich.  There are no other apparent factors weighing against disclosure.  Accordingly, Twitter's motion to quash is denied.

### IV.  CONCLUSION

For the reasons discussed above, Twitter's motion is denied.  Twitter is ordered to respond to the Subpoena by October 20, 2020.

---

[3] Even if the Account user is not the original source, that person may be able to provide information leading to the identification of the original source.

**IT IS SO ORDERED.**

Dated: October 6, 2020



_____
Judge Donna M. Ryu
United States Magistrate Judge